IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| LENDINGCLUB BANK, NATIONAL ASSOCIATION, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Civil Action No. 1:22cv0484 (AJT/JFA) |
| LENDDINGCLUB.COM, *et al.*, ) ) | |
| Defendants. ) ) | |

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

This matter is before the court on plaintiff's motion for default judgment against 150 defendant domain names pursuant to Federal Rule of Civil Procedure 55(b)(2). (Docket no. 16). Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with the court his proposed findings of fact and recommendations, a copy of which will be provided to all interested parties.

### Procedural Background

On May 2, 2022, plaintiff filed a complaint for *in rem* relief against 150 defendant domain names pursuant to the *in rem* provisions of the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d).[1] (Docket no. 1) ("Compl."). Plaintiff sent letters to the physical and/or email addresses provided by the registrant(s) of defendant domain names notifying them that plaintiff had filed this action, attaching a copy of the complaint, and providing notice of plaintiff's intent to proceed *in rem*. (Docket nos. 7 at 7; 8 ¶ 5–7; *Id.* at 8).

---

[1] Plaintiff also brought an *in rem* trademark infringement claim against defendant domain names, but plaintiff requests that count be dismissed without prejudice. (Docket no. 16 at 4).

1


Where the registrant(s) did not provide their addresses, plaintiff sent the letter to the registrar(s) of those defendant domain names. (Docket nos. 7 at 7 n.1; 8 ¶ 8).

On August 1, 2022, plaintiff filed a motion for order to publish notice of action. (Docket no. 6). The court granted the motion and entered an order requiring plaintiff to publish notice of this action. (Docket no. 9). Plaintiff arranged for publication of notice of the action in *The Washington Post* on August 15, 2022. (Docket no. 10 at 1, 3–5).

On October 13, 2022, District Judge Trenga filed an order directing plaintiff to immediately obtain default and, upon entry of default, file a motion for default judgment. (Docket no. 11). Plaintiff filed a request for entry of default on October 18, 2022. (Docket no. 12). Plaintiff filed an amended request for entry of default on December 8, 2022, which included an affidavit from Mike Rodenbaugh in support of the request. (Docket nos. 14, 14-1). On December 9, 2022, the Clerk of Court entered default against defendant domain names. (Docket no. 15). On December 30, 2022, plaintiff filed this motion for default judgment and a memorandum in support. (Docket nos. 16–17). On January 3, 2023, the undersigned filed an order directing plaintiff to file a notice of hearing, file a supplemental memorandum addressing why joinder of defendant domain names is appropriate, and serve defendant domain names with the motion for default judgment pleadings. (Docket no. 18). On January 18, 2023, plaintiff filed the memorandum of points and authorities in support of joinder of all defendants and a notice of hearing for Friday, February 24, 2023, at 10:00 a.m. (Docket no. 19–20). Plaintiff filed a second declaration from Mike Rodenbaugh on January 31, 2023, stating that plaintiff served the motion, notice of hearing, memoranda in support, and proposed order on defendant domain names and, where the registrant(s) did not provide any address, the registrars. (Docket no. 21 ¶¶ 2, 5–9). At

the hearing on Friday, February 24, 2022, counsel for plaintiff appeared, but no one appeared on behalf of any of the defendant domain names.

## Factual Background

The following facts are established by the complaint and the memorandum in support of plaintiff's motion for default judgment. (Compl.; Docket no. 17). Plaintiff is a national banking association founded in 2006 with its principal place of business in Lehi, Utah. (Compl. ¶¶ 7, 17). Plaintiff is a leading digital marketplace bank in the United States and internationally, where members can gain access to a broad range of financial products and services. (Compl. ¶ 16). Since 2007, plaintiff has had over 3.8 million members join. *Id.* Plaintiff has also received a significant amount of industry and press recognition in the United States and worldwide. (Compl. ¶ 24).

Plaintiff has continuously used the LENDINGCLUB mark in United States commerce since its founding, and plaintiff's primary domain name and website is LendingClub.com. (Compl. ¶¶ 16–17). Plaintiff registered the LENDINGCLUB mark in numerous jurisdictions, including various registrations with the United States Patent & Trademark Office ("USPTO"). (Compl. ¶¶ 17, 20; Docket no. 1-3 at 3–6). The LENDINGCLUB mark is registered with USPTO for "providing a website featuring technology that enables borrowers and investors to inquire and obtain loan and investing options and loan performance information." (Compl. ¶ 21; Docket no. 1-3 at 5). In December 2018, plaintiff began exclusively using the MY INSTANT OFFER mark in association with its technology and services, and plaintiff registered the trademark with USPTO in November 2019. (Compl. ¶¶ 18, 20; Docket no. 1-3 at 7–8). Plaintiff is the registrant for the myinstantoffer.com domain name. (Compl. ¶ 18).

3

Plaintiff has engaged in significant efforts to protect consumers by, *inter alia*, defensively registering domain names that represent typographical variations of the LENDINGCLUB mark and pursuing the disabling of websites and transfer of domain names that are being used to confuse and mislead consumers. (Compl. ¶ 26). Plaintiff has also pursued an action under the Uniform Domain-Name Dispute-Resolution Policy ("UDRP") to obtain transfer of 57 other domain names that infringe upon the LENDINGCLUB mark and were registered in bad faith. (Compl. ¶ 27).

Plaintiff alleges defendant domain names represent unauthorized colorable imitations of plaintiff's marks, and they were registered for the purpose of luring internet visitors when such visitors are attempting to reach plaintiff's websites. (Compl. ¶¶ 28, 33, 40). Plaintiff alleges defendant domain names were registered and/or are being used in bad faith and/or to cause consumer confusion as to plaintiff's marks. (Compl. ¶ 29). Many defendant domain names represent typographical errors of plaintiff's marks, also known as "typosquatting." (Compl. ¶ 31). Others are confusingly similar variations of plaintiff's marks. (Compl. ¶ 32).

Defendant domain names are typically configured to display pay-per-click advertisements, redirect visitors to third-party websites for sales solicitations, or direct visitors to a website that attempts to force the visitor to download a computer virus. (Compl. ¶ 34). Registrant(s) of defendant domain names receive compensation when internet visitors click on defendant domain name and are redirected to a third-party site for a sales solicitation and/or to download and install a computer virus. (Compl. ¶ 35).

Plaintiff alleges that defendant domain names do not reflect the legal name of the registrant(s) of the domains, and the registrant(s) typically have provided material and misleading false contact information or used a service to replace the contact information when

4

applying for and maintaining the registration of defendant domain names. (Compl. ¶¶ 37, 41–42). Plaintiff alleges various defendant domain names were registered by the same person or entity and/or are under the control of the same person or entity as evidenced by use of the same registrar and/or similar registration dates and/or similar website content. (Compl. ¶ 43).

Additionally, defendant domains have not engaged in *bona fide* noncommercial or fair use of any of plaintiff's marks. (Compl. ¶ 38). The websites displayed by the registrant(s) of defendant domain names are likely to be confused with plaintiff's legitimate online location at LendingClub.com. (Compl. ¶¶ 39, 44). Plaintiff has never authorized the use of its marks within defendant domain names and/or associated websites. (Compl. ¶ 36).

## Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Based on the failure to plead or otherwise defend against this action, the Clerk of Court has entered a default as to the 150 defendant domain names. (Docket no. 15).

A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter when necessary to enter or effectuate judgment.

## Joinder Under Federal Rule of Civil Procedure 20

As an initial matter, this proposed findings of fact and recommendations will address whether the 150 defendant domain names were joined properly as defendants in this action. Federal Rule of Civil Procedure 20(a)(2) directs that multiple defendants may be joined in one action if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A)–(B). Thus, there are two tests that must be satisfied for a finding of proper joinder under Rule 20: first, a right to relief must be asserted against each defendant that relates to or arises out of the same transaction, occurrence, or series of transactions or occurrences; and second, a question of law or fact common to all defendants must arise in the suit. The Supreme Court has generally encouraged joinder of claims, parties, and remedies in order to "entertain[] the broadest possible scope of action consistent with fairness to the parties." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

Plaintiff does not satisfy the transaction or occurrence test under Rule 20(a)(2). Plaintiff points to similarities in the registration of defendant domain names, such as that they were "registered and used in the same type of successive, illegal cybersquatting transactions." (Docket no. 19 at 6). However, as noted in the undersigned's order (Docket no. 18), claims arising out of the same *types* of transactions or having similarities are not the same as claims "arising out of the same transaction, occurrence, or series of transactions or occurrences" required under Rule 20(a)(2). Therefore, joinder is not appropriate under Rule 20(a)(2).

On the other hand, the court has discretion to act *sua sponte* to, "on just terms, add or drop a party." Fed. R. Civ P. 21. Previously, this court has found that any defects to joinder may

6

be disregarded when the joinder does not affect any party's substantial rights. *See Coach, Inc. v. 1941 Coachoutletstore.com*, 2012 WL 27918, at *4 (E.D. Va. Jan. 5, 2012) ("And, there is no prejudice to any defaulting defendant, whose liability may be established upon default irrespective of the presence of any other defendant. As a result, the Court finds that it must disregard any potential defects related to joinder, as they do not affect any party's substantial rights, and the Court's correction of those defects under Rule 21 would not be on just terms.") (internal citation and quotation marks omitted). Here, none of the defaulting defendant domain names are prejudiced by joinder, as their liability is established by their own default, not the default of any other defendant domain name. As such, joinder does not affect any of defendant domain names' substantive rights.

For this reason, the undersigned recommends a finding that this motion for default judgment against the 150 defendant domain names should proceed in this single action.

### Jurisdiction and Venue

A court must have both subject matter and personal or *in rem* jurisdiction over a defaulting defendant before it can render a default judgment. Plaintiff's claim arises under the ACPA, 15 U.S.C. § 1125(d), and this court has jurisdiction over the subject matter of this action under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a). (Compl. ¶¶ 10–11; Docket no. 17 at 8–9).

This court has *in rem* jurisdiction over defendant domain names under 15 U.S.C. § 1125(d)(2). The first required element for *in rem* jurisdiction over a domain name is that the domain name violates plaintiff's trademark rights. *See* 15 U.S.C. § 1125(d)(2)(A)(i). Plaintiff has made uncontested assertions that it has registered the LENDINGCLUB and MY INSTANT OFFER marks with the USPTO. (Compl. ¶¶ 17–18, 20). The marks are being violated by the

unlawful registration and use of defendant domain names that use the LENDINGCLUB and MY INSTANT OFFER marks without plaintiff's authorization. (Compl. ¶¶ 28–45).

The ACPA also conditions *in rem* jurisdiction upon a finding that the trademark owner (a) is unable to obtain personal jurisdiction over a person who would otherwise be a defendant in a civil action under the ACPA or (b) through due diligence cannot find the person who would have been a defendant in such an action, having sent a notice of the alleged violation and intent to sue to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar and publishing a notice of the action as the court may direct. *See* 15 U.S.C. § 1125(d)(2)(A)(ii). Given the uncontested assertion that the registrant(s) provided material and misleading false contact information, used services to replace the registrant(s) name, or left the contact information blank, plaintiff, through due diligence, has not been able to find the person(s) who would have been defendant(s) in such action. (Compl. ¶¶ 41–42; Docket no. 17 at 8–9). Plaintiff has sent notice of the alleged violation and intent to sue to the registrant(s) of defendant domain names (or registrar(s) where the addresses were not given) and published notice of the action as directed by the court. (Docket nos. 7 at 7; 8 ¶¶ 5–8; 10 at 1, 3–5). Additionally, for the same reasons, plaintiff cannot obtain personal jurisdiction over the person(s) who would otherwise be defendant(s) in the action, as plaintiff is not able to prove the registrant(s) established minimum contacts with this jurisdiction. Even though VeriSign, Inc. ("Verisign") and Public Interest Registry are the registries for defendant domain names, and they are located in this district, "this is not enough to establish minimum contacts." *GlobalSantaFe Corp.*, 250 F. Supp. 2d at 615. Accordingly, plaintiff has satisfied the requirements of 15 U.S.C. § 1125(d)(2)(A)(ii). Therefore, the court has *in rem* jurisdiction over defendant domain names under 15 U.S.C. § 1125(d)(2).

Venue is proper in this district under 15 U.S.C. § 1125(d)(2)(C)(i), which places venue for an *in rem* ACPA action in the judicial district in which the domain name's registrar, registry, or other domain name authority that registered or assigned the domain name is located. VeriSign is the registry for the .COM and .NET top level domains, and it is located in this judicial district. (Compl. ¶ 8). Similarly, Public Interest Registry is the registry for the .ORG top level domain, and it is also located in this district. *Id.* Because each of defendant domain names are .COM, .NET, or .ORG top level domain names (Docket no. 1-2), their domain registries are located in this district. Accordingly, venue is proper in this district.

For these reasons, the undersigned recommends a finding that this court has subject matter jurisdiction over this action, that the court has *in rem* jurisdiction over defendant domain names, and that venue is proper in this court.

### Service

Federal Rule of Civil Procedure 4(n)(1) provides that the court may assert jurisdiction over property if authorized by a federal statute, and notice to claimants of the property must be given as provided in the statute or by serving a summons under this rule. 15 U.S.C. § 1125(d)(2)(B) states the actions outlined in § 1125(d)(2)(A)(ii) shall constitute service of process. The actions described in 15 U.S.C. § 1125(d)(2)(A)(ii)(II) include "(aa) sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar; and (bb) publishing notice of the action as the court may direct promptly after filing the action."

Plaintiff sent letters to the physical and email addresses provided by the registrant(s) of defendant domain names stating that plaintiff had filed a lawsuit in this district, attaching a copy of the complaint, and providing notice of plaintiff's intent to proceed *in rem*. (Docket no. 8 ¶¶

9

5–7). Where the registrant(s) provided no address, plaintiff sent the letters to the registrar's address. *Id.* ¶ 8. Following the court's order directing plaintiff to publish the order in *The Washington Times* or *The Washington Post* (Docket no. 9), plaintiff filed a proof of service by publication that stated the order was published in *The Washington Post* on August 15, 2022 (Docket no. 10 at 1, 3–5). Accordingly, the undersigned recommends a finding that service of process has been accomplished as set forth in 15 U.S.C. § 1125(d)(2)(B).

### **Grounds for Entry of Default**

In accordance with Federal Rule of Civil Procedure 12(a) and the notice published in *The Washington Post* (Docket no. 10 at 4), anyone making a claim to defendant domain names was required to file a responsive pleading by September 5, 2022; twenty-one (21) days after the notice of action was published. No responsive pleading has been filed, and the time for doing so has since expired. On October 18, 2022, plaintiff filed a request for entry of default against defendant domain names. (Docket no. 12). Plaintiff filed an amended request for entry of default against defendant domain names and attached an affidavit from Mike Rodenbaugh on December 8, 2022. (Docket nos. 14, 14-1). Thereafter, the Clerk of Court entered a default against defendant domain names on December 9, 2022. (Docket no. 15).

For the reasons stated above, the undersigned recommends a finding that notice of this *in rem* action was proper, that no one has made a timely claim to defendant domain names, and that the Clerk of Court properly entered a default as to defendant domain names.

### **Liability**

According to Fed. R. Civ. P. 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Given that a default has been entered, the factual allegations in the complaint are deemed admitted. *See* Fed. R. Civ. P. 8(b)(6).

Plaintiff is pursuing default judgment on the grounds of a violation of the ACPA. A necessary predicate to an ACPA action is that a plaintiff has a protectable interest in a trademark. *See Wagner v. lindawagner.com*, 202 F. Supp. 3d 574, 580–81 (E.D. Va. 2016). As an initial matter, plaintiff has established common law trademark rights to the LENDINGCLUB and MY INSTANT OFFER marks. Common law trademark ownership rights may be established by "actual use of the mark in a given market." *Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 267 (4th Cir. 2003). A party may assert a protectable interest in an unregistered trademark if the mark is (1) used in commerce, and (2) sufficiently distinctive. *Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Estrangers a Monaco*, 329 F.3d 359, 363 (4th Cir. 2003). Plaintiff has also obtained a U.S. trademark for LENDINGCLUB and MY INSTANT OFFER. (Compl. ¶¶ 17–18, 20).

Plaintiff has demonstrated sufficient use of the marks in commerce. As reflected in the complaint, plaintiff has actively and continuously used the marks in promoting its financial services and products since 2006, for the LENDINGCLUB mark, and 2018, for the MY INSTANT OFFER mark. (Compl. ¶¶ 17–18). Plaintiff has also held the domain names LendingClub.com and myinstantoffer.com, which both use its marks. (Compl. ¶¶ 16, 18). Plaintiff has used its marks to service over 3.8 million members since 2007. (Compl. ¶ 16).

Plaintiff has also demonstrated the distinctiveness of the LENDINGCLUB and MY INSTANT OFFER marks. There are two ways plaintiff can demonstrate the distinctiveness of a mark: "1) that plaintiff's mark is inherently distinctive; and 2) that even if the plaintiff's mark is not inherently distinctive, the mark has become distinctive by acquiring secondary meaning." *Teaching Co. Ltd. P'ship v. Unapix Entm't, Inc.*, 87 F. Supp. 2d 567, 575 (E.D. Va. 2000). The registration of the marks with USPTO "is *prima facie* evidence that the mark is at least

11

descriptive and has acquired distinctiveness." *Central Source LLC v. annualdcreditreport.com*, 2014 WL 3811162, at *6 (E.D. Va. Aug. 1, 2014) (citing *Am. Online, Inc. v. AT & T Corp.*, 243 F.3d 812, 816 (4th Cir. 2001)). At minimum, plaintiff's LENDINGCLUB and MY INSTANT OFFER marks have become distinctive by acquiring secondary meaning. Plaintiff has used the LENDINGCLUB mark since 2006 and the MY INSTANT OFFER mark since 2018. (Compl. ¶¶ 17–18). Plaintiff has widely used these marks to promote its services to customers, of which over 3.8 million have become plaintiff's members. (Compl. ¶¶ 16–18). Consumers have come to distinguish and recognize the legitimacy of plaintiff's services as a result of the use and widespread promotion of the LENDINGCLUB and MY INSTANT OFFER marks. (Docket no. 17 at 11). Additionally, plaintiff's federal registration of the marks provides *prima facie* evidence that the mark is at least descriptive and has acquired distinctiveness, which is not rebutted by the defaulting defendant domain names.

To establish an ACPA violation, plaintiff is required to prove (1) that registrant(s) had bad faith intent to profit from using defendant domain names, and (2) that defendant domain names are identical or confusingly similar to, or dilutive of, the distinctive marks owned by plaintiff. 15 U.S.C. § 1125(d)(1)(A); *see People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001). In determining whether defendant acted in bad faith, a court may consider several factors, including:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
>
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
>
> (III) the person's prior use, if any, of the domain name in connection with the *bona fide* offering of any goods or services;

>  (IV) the person's *bona fide* noncommercial or fair use of the mark in a site accessible under the domain name;
>
>  (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
>
>  (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the *bona fide* offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
>
>  (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
>
>  (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
>
>  (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)(1) of this section.

15 U.S.C. § 1125(d)(1)(B)(i); *see People for Ethical Treatment of Animals*, 263 F.3d at 368–69.

First, plaintiff has established that the registrant(s) possessed the requisite bad faith intent to profit from defendant domain names. (Compl. ¶ 29; Docket no. 17 at 13–15). Defendant domain names do not reflect the trademark or intellectual property rights of the registrant(s). (Compl. ¶ 36; Docket no. 17 at 13). Instead, the registrant(s) are using defendant domain names with the intent to divert consumer away from plaintiff's sites to their sites for commercial gain. (Compl. ¶ 40; Docket no. 17 at 14). Many defendant domain name sites

13

display pay-per-click advertisements, redirect visitors to third-party websites for sales solicitations, or direct visitors to a website that attempts to force the visitor to download a computer virus. (Compl. ¶¶ 34–35). Defendant domain names also have no noncommercial or fair use of the marks in a site accessible under the domain name. (Compl. ¶ 38; Docket no. 17 at 14). Lastly, the registrant(s) took steps to conceal their identifying and contact information when applying for the registration of defendant domain names. (Compl. ¶¶ 41–42; Docket no. 17 at 15).

Second, plaintiff has established that defendant domain names are confusingly similar to the distinctive marks owned by plaintiff. (Compl. ¶¶ 31–32; Docket no. 17 at 11–13). A domain name is considered confusingly similar to a mark when the domain name is a typographical variation of the mark or is a variation of the mark where the mark remains the dominant portion of the domain name. *See Volvo Trademark Holding AB v. Volvospares.com*, 703 F. Supp. 2d 563, 568 (E.D. Va. 2010) ("In assessing whether a mark is confusingly similar, the allegedly infringing domain name does not need to be identical to the registered mark. Rather, the 'dominant or salient portions' of the domain name must be sufficiently similar.") (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 936 (4th Cir. 1995)); *Central Source LLC*, 2014 WL 3811162, at *7 (finding that defendant domain names satisfy the confusingly similar test where the "misspelling of the AnnualCreditReport mark constitutes a clear attempt at typosquatting of the AnnualCreditReport mark insofar as omitting or inserting a letter or letters from the word 'AnnualCreditReport,' altering the order of the letters in the word 'AnnualCreditReport,' or substituting a different letter in the world 'AnnualCreditReport' takes advantage of common errors made in typing by consumers when attempting to reach <annualcreditreport.com>.").

Defendant domain names consist of typographical errors of one of plaintiff's mark, other variations of the marks, and the addition of letters, terms, or abbreviations (many of which relate to the financial services industry) to one of the marks. (Compl. ¶¶ 31–33; Docket no. 1-2). For defendant domain names that use a typographical error or insertion of unnecessary letters along with one of plaintiff's marks, a review of these defendant domain names makes clear that the registrant(s) are attempting to capitalize on common errors made in typing by consumers when attempting to reach plaintiff's websites at LendingClub.com and/or myinstantoffer.com. For the other defendant domain names, a review shows that one of plaintiff's marks is the dominant portion of these defendant domain names. Therefore, defendant domain names are confusingly similar to the mark.

For these reasons, the undersigned recommends a finding that plaintiff has established a violation of the ACPA.

## Relief

In this *in rem* action, plaintiff seeks an order directing VeriSign and Public Interest Registry to change the registrars of record for defendant domain names to plaintiff's domain name registrar of choice, CSC Corporate Domains, Inc., and direct CSC Corporate Domains, Inc. to take all necessary steps to have plaintiff listed as the registrant of defendant domain names. (Docket no. 16 at 4). Pursuant to 15 U.S.C. § 1125(d)(1)(C), "[i]n any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." This court has previously ordered the transfer of domain names where those domain names infringe on valid trademarks. *See Int'l Bancorp, L.L.C. v. Societe Des Baines De Mer Et Du Cercle Des Etrangers A Monaco*, 192 F. Supp. 2d 467, 490 (E.D. Va. 2002). Given that

plaintiff has established a violation of the ACPA through the registration and use of defendant domain names, the undersigned recommends an order be entered directing VeriSign and Public Interest Registry to change the registrars of record for defendant domain names to plaintiff's domain name registrar of choice, CSC Corporate Domains, Inc., and direct CSC Corporate Domains, Inc. to take all necessary steps to have plaintiff listed as the registrant of defendant domain names.

## Conclusion

For the reasons stated above, the undersigned recommends that a default judgment be entered in favor of plaintiff and against each defendant domain name pursuant to Count I alleging a violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), and the dismissal without prejudice of Count II alleging *in rem* trademark infringement. The undersigned recommends it be ordered that VeriSign, Inc. and Public Interest Registry, as registries for the following domain names, change the registrars of record for the following defendant domain names to plaintiff's domain name registrar of choice, CSC Corporate Domains, Inc., and direct CSC Corporate Domains, Inc. to take all necessary steps to have plaintiff listed as the registrant of defendant domain names lenddingclub.com, helplendingclub.com, lendingclubbank.com, lendingclubsolutions.com, lendigclub.com, lendingclu.com, lendingxlub.com, lenfingclub.com, lenndingclub.com, lendinngclub.com, supportatlendingclub.com, lnedingclub.com, lendingclum.com, lendingcplub.com, lendingclubl.com, leneingclub.com, lendiingclub.com, lendincglub.com, lendingclbu.com, lendnigclub.com, lenidngclub.com, lendingclob.com, kendingclub.com, lendingclab.com, leandingclub.com, endingclub.com, lemdingclub.com, lendingvlub.com, lewndingclub.com, lendingclubb.com, lendingclubauro.com, lendingclubauti.com, lendingclubsuto.com,

lendinhclub.com, myinstantofferx.com, lendingclubaito.com, lendingclubato.com, lendingclubauo.com, wwwlendingclubauto.com, myinstantofferz.com, yourlendingclub.com, lendingcllub.com, lendingclup.com, lendngclub.com, wwwlendingclub.com, leningclub.com, lndingclub.com, lendinglclub.com, landingclub.com, lendingcub.com, elndingclub.com, lebdingclub.com, lendinfclub.com, lendengclub.com, lendingclb.com, lwndingclub.com, lensingclub.com, luxurylendingclub.com, peerlendingclub.com, bitcoinlendingclub.org, equitylendingclub.com, artlendingclub.com, bitcoinlendingclub.com, bitcoinlendingclubs.com, bitlendingclub.com, lendinglcub.com, eclendingclub.com, myinstantoffer.org, ledningclub.com, lendingartclub.com, lendingblub.com, lendingclubaboutmyloan.com, lendingclube.com, lendingclubhelp.com, lendingclug.com, lendingingclub.com, lendlingclub.com, lucrativelendingclub.com, personallendingclub.com, colendingclub.com, lendibgclub.com, lendingclubcard.com, lendingclubmicro.com, bdlendingclub.com, lendingclub.net, lindingclub.com, lendingclubusa.com, loanlendingclub.com, smallbizlendingclub.com, sociallendingclub.com, trilendingclub.com, usalendingclub.com, usalendingclub.net, uxlendingclub.com, lendingsclub.com, karmaclublending.com, lendingclubloan.com, olendingclub.com, llendingclub.com, liquidatelendingclub.com, thelendingclub.com, sellyourlendingclubloans.com, businesslendingclub.com, californialendingclub.com, californialendingclub.net, californialendingclub.org, capitallendingclub.com, lendingclubs.org, melodylendingclub.com, privatelendingclub.com, usalendingclub.org, lendingclubcambodia.com, lendingclubcoin.com, lrndingclub.com, lendingclubaut.com, easylendingclub.com, millenniallendingclub.com, lengingclub.com, lendindclub.com, lendinglub.com, myinstantofferloans.com, myinstantofferloan.com, myinstantofferloanpro.com, clublendingbusiness.com, lendingclubuae.com, lendignclub.com, lendungclub.com,

lendingclun.com, leendingclub.com, lendimgclub.com, lendinggclub.com, ledingclub.com, lendingclyb.com, lendingclib.com, myinstantofferclub.com, lendingckub.com, lendongclub.com, lendingcluv.com, lendingclub365.com, lendinclub.com, lendingautoclub.com, lendingculb.com, lendingtreeclub.com, liendingclub.com, crelendingclub.com, lendingclubcorporation.com, lendingcluc.com, clublending.com, lendingclud.com, and p2plendingclub.com

## Notice

The parties are notified that objections to this proposed findings of fact and recommendations must be filed within fourteen (14) days of service of this proposed findings of fact and recommendations and a failure to file timely objections waives appellate review of the substance of the proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on this proposed findings of fact and recommendations.

Counsel for plaintiff is directed to send a copy of these proposed findings of fact and recommendations to the registrant(s) at the email and postal addresses provided by the registrant(s) to the registrars, as reflected in the Declaration of LeAnn Campbell (Docket no. 8, ¶¶ 5–8), and file a certificate of service indicating the date those copies were sent. The fourteen-day period for filing objections will be begin on the date the proposed findings of fact and recommendations were sent by plaintiff's counsel.

ENTERED this 27th day of February, 2023.

/s/
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia